

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

GERALD C. MANN
~~WILLXXWILSON~~
ATTORNEY GENERAL

Honorable O. P. Lockhart
Chairman, Board of Insurance Commissioners
Austin, Texas

Dear Sir:

Opinion No. O-4375
Re: Whether revenue bonds issued by
local Texas Housing authorities in-
corporated under the Texas Housing
Act, not secured by valid first
lien on Texas real estate, are
eligible as tax reducing "Texas
securities" under the Robertson
Law, Articles 4765-4769, as amended,
and as tax reducing securities
under Article 7064, as amended.

Your letter of January 19, 1942, submitting in sub-
stance the above question to this Department for an opinion is
quoted as follows:

"Please advise whether revenue bonds issued by
local Texas Housing Authorities incorporated under
the Texas Housing Authority Act (Article 1269k,
Vernon's Texas Civil Statutes, H.B. 821, Acts 1937,
45th Legislature, Chapter 462, pages 1144-1157,
Secs. 1-26, as amended by H.B. 102, Acts 1937, 45th
Legislature, Second called session, Chapter 41,
pages 1924-1939, Secs. 1 and 2), which bonds are
not secured by valid first liens upon Texas real
estate but are secured only by pledges of (1)
annual contributions of funds from the United States
Housing Authority under its assistance contract with
the local Texas Housing Authority at San Antonio;
(2) rents and revenues from the San Antonio project
properties themselves; (3) reserve funds set aside
by the issuing local San Antonio Authority for main-
tenance, repairs, replacements, vacancies and col-
lection losses; (4) as to a series A, a special fund
set aside by the issuing San Antonio local authority
with its fiscal agent equal in amount to the prin-
cipal and interest maturing for the first nine
years, are eligible as tax reducing 'Texas securities'
under the Robertson Law, Articles 4765-4769, as amended,
and as tax reducing securities under Article 7064 as

amended. In this connection we invite your attention to Art. 1269k-1." (Acts 1939, Leg. p. 427, et seq.)

Under the terms of your letter we must assume that such bonds have been issued in full conformity with the law, but we learn from our records that they have not been submitted to the Attorney General's Department for approval, and nothing contained herein is to be interpreted as passing on the legality or validity of these bonds.

Chapter 4 of Title 78, Vernon's Civil Statutes of the State of Texas, "Texas Securities and Gross Receipts Tax", known as the "Robertson Law", as originally enacted and as amended, provided for and required of life insurance companies engaged in transacting the business of writing life insurance in this State the investment of a sum of money equal to at least seventy-five per cent of the aggregate amount of the legal reserve required by the laws of the state of its domicile in "Texas securities" and in "Texas real estate". Such investments to be made and maintained on account of its policies of insurance in force written on the lives of citizens of this State consituting the reserve denominated by the act as its "Texas reserves".

The act defined the term "Texas securities" as follows:

"The term 'Texas Securities,' as used in this Chapter, shall be held to include all bonds issued under and by virtue of the Federal Farm Loan Act approved July 17, 1916, when such bonds are issued against and secured by promissory notes or other obligations the payment of which is secured by mortgage, deed of trust, or other valid lien upon unencumbered real estate situated in this State; bonds of the State of Texas; bonds or interest-bearing warrants of any county, city, town, school district or other municipality or subdivision which is now or may hereafter be constituted or organized and authorized to issue such bonds or warrants under the Constitution and laws of this State; notes or bonds secured by mortgage or trust deed insured by the Federal Housing Administrator; promissory notes and other obligations, the payment of which is secured by a mortgage, deed of trust, or other valid lien upon unencumbered real estate situated in this State, the title to which real estate is valid and the market value of which is forty (40) per cent more than the amount loaned thereon, exclusive of buildings unless such buildings are insured against fire and kept insured in some company authorized to

transact business in the State of Texas, and the
policy or policies transferred to the company
taking such mortgage or lien; or upon first liens
upon leasehold estates in real property and improve-
ments situated thereon, the title to which is valid,
and the leasehold has not less than thirty (30)
years to run before expiration, provided that the
duration of any loan upon such leasehold estates shall
not exceed a period of ten (10) years. If any part
of the value of such real estate is in buildings,
such buildings shall be insured against fire and
kept insured for at least fifty (50) per cent of the
value thereof in some company authorized to transact
business in this State and the policy or policies
shall be transferred to the company taking such
mortgage or lien.

"The term 'Texas Securities,' as used in this
Chapter, shall also be held to include obligations
secured collaterally by such first lien notes; first
mortgage bonds of any solvent corporation incorpor-
ated under the laws of this State and doing business
in this State, and which has paid, out of its actual
earning, dividends of an average of at least five (5)
per cent per annum on the par value of all of its
par value stock outstanding and on the sale value
of all of its no par value stock outstanding for a
period of at least five (5) years next preceding
the date of such investment, and which has not at
any time defaulted in the payment of interest on any
of its obligations, any such investment in the bonds
of any one such corporation not to exceed five (5)
per cent of the admitted assets of the insurance com-
pany making the investment, and loans made to policy-
holders on the sole security of the reserve values
of their policies. The investments required by this
Chapter may be made by the purchase of not more than
one building site, and in the erection thereon of
not more than one office building, or in the purchase,
at its reasonable market value, of such office build-
ing already constructed and the ground upon which the
same is located in any city of the State of more than
four thousand (4,000) inhabitants. All real estate
owned by life insurance companies in this State on
December 31, 1909, and all thereafter acquired under
the provisions of this Chapter, or by foreclosure of
a lien thereon shall be treated, to the extent of its
reasonable market value, as a part of the investment
required by this Chapter. And 'Texas Securities'
shall be held to include every character of investment

authorized by the terms of this Article; provided that the above restrictions concerning mortgage loans shall not apply to loans insured by the Federal Housing Administrator.  As amended Acts 1941, 47th Leg., p. 848, ch. 524, ¶1."

The above paragraph contains in substance the provisions of Article 4766, Vernon's Civil Statutes of Texas, and sets out in detail the character of investment that may be made by life insurance companies operating in Texas under the Robertson law.  This article does not mention the matter of taxation.  The article of the Robertson Law relating to taxation, the amount of taxes to be paid by such life insurance companies operating in Texas, and the reductions to be allowed such companies under the law, when certain investments are made by them in the State of Texas, is Article No. 4769, and for your information we quote Article No. 4769 in full as follows:

"Each life insurance company not organized under the laws of this State, transacting business in this State, shall annually, on or before the 1st day of March, make a report to the Commissioner, which report shall be sworn to by either the president or vice-president and secretary or treasurer of such company, which shall show the gross amount of premiums collected during the year ending on December 31st, preceding, from citizens of this State upon policies of insurance.  Each such company shall pay annually a tax equal to four and sixty-five hundredths (4.65) per cent of such gross premium receipts.  When the report of the investment in Texas securities, as defined by law, of any such companies as of December 31st of any year shall show that it has invested on said date as much as thirty (30) per cent of its total Texas reserves as defined by law, in promissory notes or other obligations secured by mortgage, deed of trust, or other lien on Texas real estate and/or in loans to residents or citizens of Texas secured by the legal reserve on the respective policies held by such borrowers, the rate of occupation tax shall be reduced to four and five one hundredths (4.05 per cent; and when such report shall show that such company has so invested on said date as much as sixty (60) per cent of its total Texas reserve, the rate of such tax shall be reduced to three and six tenths (3.6) per cent; and when such report shall show that such company has so invested, on said date, as much as seventy-five (75) per cent of its total Texas reserve, the rate of such tax shall be reduced to three and one tenth (3.1) per cent.  All such companies shall, in any event, make the investments in

Texas securities in proportion to the amount of
Texas reserves as required by law.  Such taxes
shall be for and on account of the business trans-
acted within this State during the calendar year
in which such premiums were collected, or for that
portion thereof during which the company shall
have transacted business in this State.  This Act
shall not in any manner affect the obligation for
the payment of any taxes that have accrued and that
are now due or owing, but the obligation as now
provided by law for the payment of such taxes shall
continue in full force and effect.  As amended Acts
1941, 47th Leg., H. B. #8, Art. XVIII, S. 3."
(Emphasis added)

We have underlined in the above paragraph the parts
which we think bear most directly on your question.  We think
it is also well to mention in this connection that this article
was last amended by the 47th session of the legislature, under
the Acts of 1941, and to point out that such amendment is later
in time than either Article 1269k or Article 1269k-1, herein-
after referred to, indicating that the legislature did not intend
to include the Housing Authority bonds in the terms of Art. 4769.

Article 1269k, as enacted by the 45th Legislature, in
1937, and as amended by the 2nd Called Session of the 45th Legis-
lature, in 1937, provided for the organization of local housing
authorities, empowered such local housing authorities to issue
bonds and to make provisions for the payment thereof.  Article
1269k-1, enacted by the 46th Legislature, in 1939, provides that
such bonds shall be valid and legal investments for life insurance
companies, other organizations and individuals, the relevant part
of said article being as follows:

"Notwithstanding any restrictions on investments
contained in any laws of this State, the State and all
public officers, municipal corporations, political sub-
divisions, and public bodies, all banks, bankers, trust
companies, savings banks and institutions, building and
loan associations, savings and loan associations, in-
vestment companies, and other persons carrying on a
banking business, all insurance companies, insurance
associations and other persons carrying on an insurance
business and all executors, administrators, guardians,
trustees and other fiduciaries may legally invest any
sinking funds, moneys or other funds belonging to them
or within their control in any bonds or other obligations
issued by a housing authority pursuant to the Housing
Authorities Law (Chapter 462, Regular Session of the
Forty-fifth Legislature, as amended by House Bill No. 102,

Second Called Session of the Forty-fifth Legislature,
and amendments thereto) or issued by any public housing
authority or agency in the United States, when such
bonds or other obligations are secured by a pledge of
annual contributions to be paid by the United States
Government or any agency thereof, and such bonds and
other obligations shall be authorized security for all
public deposits; it being the purpose of this Act to
authorize all persons, firms, corporations, associations,
political subdivisions, bodies and officers, public or
private, to use any funds owned or controlled by them,
including (but not limited to sinking, issuance, invest-
ment, retirement, compensation, pension and trust funds,
and funds held on deposit, for the purchase of any such
bonds or other obligations; provided however, that
nothing contained in this Act shall be construed as
relieving any person, firm, or corporation from any
duty of exercising reasonable care in selecting securities."

You will note that this article makes no special refer-
ence to taxation nor to the eligibility of such bonds for use as
tax reducing "Texas securities" as described in Article 4769,
quoted hereinabove.

The Commission of Appeals of the Supreme Court of Texas
in Santa Rosa Infirmary v. City of San Antonio, 259 S.W. 926, in
passing on the provisions of Article 8, Section 2, of the Consti-
tution of Texas, holds as follows:

"Exemptions from taxation are never favored and
in construing laws exempting any citizen or class of
property all doubts are resolved against the exemption."

It is our view that the rule of statutory construction
here expressed would apply with equal force in the interpretation
of laws reducing taxation.

It is therefore our opinion that the answer to the first
part of your question should be in the negative. That is, that
the bonds in question issued by local Texas housing authorities,
not secured by valid first liens on Texas real estate, are not
eligible as tax reducing "Texas securities" under the Robertson
Law, Articles 4765-4769, as amended.

We think, however, that it is correct to take a differ-
ent view in regard to the eligibility of such bonds as tax re-
ducing "Texas securities" under Article 7064, as amended.

Article 7064, as amended, Acts 1941, 47th Legislature,
H.B. No. 8, Art. XVIII, Section 1, applies to insurance companies,

other than life and other than fraternal benefit associations, and provides for a tax on gross premiums. The applicable part of said article, as it relates to your question is quoted as follows:

> "If any such insurance carrier shall have as much as one-fourth of its entire assets, as shown by said sworn statement, invested in any or all of the following securities: real estate in this State, bonds of this State, or any county, incorporated city or town of this State, <u>or other property in this State in which by law such insurance carriers may invest their funds</u>, the annual tax of any such insurance carrier shall be one and one-half per cent of its gross premium receipts; and if any such insurance carrier shall invest as aforesaid as much as one-half of its assets, then the annual tax on such insurance carrier shall be three fourths of one per cent of its gross premium receipts as above defined." (Emphasis added)

We have underlined the part of the above quotation which we think applies most directly to your question, and we believe that Article 1269k-1, quoted hereinabove, brings the bonds referred to in your question within the classification contemplated by the clause: "or other property in this State in which by law such insurance carriers may invest their funds."

We are therefore of the opinion that the second part of your question should be answered in the affirmative, and that the bonds in question are eligible as tax reducing "Texas securities" under the provisions of Article 7064, as amended, provided the bonds have been legally issued.

We do not however here pass on the question as to whether the San Antonio bonds to which you refer are legal investments for insurance companies since we do not know whether they were issued as the law directs and in view of the fact that their validity has not been passed on by the Attorney General's Department.

We trust that we have satisfactorily answered your inquiry.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By s/Robert F. Cherry
Assistant

RFC:AMM:wc

APPROVED MARCH 16, 1942
s/Grover Sellers
FIRST ASSISTANT
ATTORNEY GENERAL

Approved Opinion Committee By s/GWB Chairman